So we will hear argument next in number 21-2239, ESIP against Pujan. Pujan. Pujan. Mr. Hill. Good morning. May it please the court. My name is Gordon Hill. I represent the appellant ESIP in this case. And ESIP asserts that this case is actually very simple. The intrinsic evidence answers any and all questions with respect to the claims that are asserted. And the district court improperly relied on extrinsic evidence, especially with respect to claim construction, which led to improper claim constructions, which naturally led to incorrect infringement analyses. ESIP also submitted to this court the district court's ruling that the underlying case was found to be exceptional. One of the reasons ESIP did this was because that ruling shows many legal and factual errors that the district court committed. Maybe you should get to the specific errors on which everything turns. Okay. One of the specific errors is that the district court required mathematical precision with respect to claim construction and with respect to infringement. For example, in claim construction, one of the limitations called the eductor limitation recites that there is a distance between the nozzle and an aperture. The district court required that that aperture be defined precisely. It had to be defined by its shape and exactly how it would be measured, even though the claim language did not require that specificity. Another error that was made was the district court conflated the cavity that is in the written description of the patent with the aperture that is recited in the claim. One of the best examples of this is in defendant's response brief on page three. There is a picture of the eductor configuration as found in figure nine of the patent. Defendants have shaded a portion of that yellow, and they have defined that as the aperture. It's not in our briefs. It's not colored. I don't have my electronic version. Printed briefs. There you go. Thank you. Yeah, one of the things both parties should know when these things get printed and you don't use a color printer, the color is invisible. Okay. But I know what you what you're talking about. Okay, thank you. I don't, though. Can you tell me what you think is yellow? There's a small portion right in the middle that's shaded as yellow. And your argument is that they invented that as an individual structure when it's actually just part of chamber 116. That is correct. And that goes to your argument that it's supposedly two-dimensional instead of three-dimensional? Well, that yellow portion is part of it. What happens if I agree with the district court that whatever the 119 is, that it's three-dimensional? It's a structure, right? The aperture is a structure. Well, the aperture is a region of empty space. It's a hole. Well, the word aperture has depth as well. So it has an entry surface and an exit surface, and there's some distance between the two things. Well, specifically with respect to exit orifice 119, I would say that that's a two-dimensional opening. Doesn't the spec refer to orifice 119 and chamber 119? It does, but the part where it refers to chamber 119. It literally says this number applies to both those things. The chamber is more than a plane. I would say that the part where the specification refers to chamber 119 is actually a typographical error. That can be found on appendix page 45 within column 10 of the patent. If we look at that, it does say, tending to evacuate the chamber, and it does say 119. But then the next sentence is, thus the reduced pressure in the chamber 116 draws liquid through the siphon tube 96 from the RISC-IV. And so that reference to 119. You're on column 10? I'm on column 10. Line? Line 39, 39 and 40. And that's on appendix page 45. Reduced pressure in the chamber draws liquid through the siphon reservoir. Why is that pertinent? Every other reference to 119 talks about the exit orifice. This is the only reference that says chamber 119. Am I right that the only reference in the spec to aperture is column 3, line 36? No, there are numerous references to apertures in the specification. Okay. With respect to the... Yeah, I counted. There are 26 in addition to the aperture that we're talking about, 119. There are 26 references to aperture in the written description, all of which describe three-dimensional structures. I'm not sure all of them describe three-dimensional structures, but a lot of them do. However, with respect to exit orifice 119... Well, the district court used the intrinsic evidence in the spec to create the answer to whether it's two-dimensional or three-dimensional. With respect to claim construction... ...says that the force from the nozzle is going into 119. And based on that, as I understand it, the district court said that's the teller for me. That's a three-dimensional structure. Right. Now, you were arguing that the intrinsic evidence doesn't solve this problem. The district court used the intrinsic evidence to arrive at the three-dimension. Well, I think the proper application of the intrinsic evidence does solve this problem. No, but don't you have to tell us why the district court committed error in claim construction when it used the word into, among other things, to say the structure is three-dimensional. It's not so much the use of the word into. It's the fact that the description in the written specification describes the exit orifice in terms of a two-dimensional opening. Where? Right here in column 10. I didn't see anything about planar. Based on the context of this... Or does it say, in essence, that 119 has to be two-dimensional? It doesn't say 119 has to be two-dimensional. But from the context, what we have here is that cavity 116 is defined by three openings. One of them is the nozzle orifice 118. One of them is the siphon 96. And one of them is the exit orifice 119. No one disputes that nozzle orifice 118 is a two-dimensional planar opening at the end of the nozzle that's pictured there. Again, referring to the picture with the yellow shading, the district court and the defendants say that that yellow shaded part is the aperture. But from the context of this description, what we can see is that the cavity is defined by those three openings. So everything between those three openings is the cavity. Where was there a concession that the nozzle opening is two-dimensional? You just said everybody agreed. I didn't see that anywhere. No one has disputed that the nozzle orifice... Whether the nozzle is two-dimensional or three-dimensional hasn't been in suit, correct? No, because everyone understood that the nozzle orifice is at the end of the nozzle. It's that point at the end of the nozzle where the measurement from the nozzle to the aperture starts. That's where the highly compressed air comes out. Yes. Right. That nozzle orifice is that point at the end of the nozzle. We simply don't know whether it is totally planar or whether it has any depth at all. But the notion that highly compressed air blasts up against a plane and somehow manages to emerge through a hole seems a little harder to believe. Well, the air goes through an orifice. The aperture, the planar opening... The air comes out of the mouth of the nozzle. Exactly. That mouth of the nozzle is nozzle orifice 118. It's just the opening part. We don't know whether that structure where the air is coming out is two-dimensional or three-dimensional because it wasn't in suit. Well, it's considered two-dimensional because it's also the nozzle portion of it has its own identification number. So the context of the specification makes it clear that the nozzle is one component. The nozzle orifice is something else. And the nozzle orifice just refers to that two-dimensional planar opening. Just looking at the claim language, should we take anything from the fact that it says into an aperture? I think that the perspective we should be thinking about in terms of measuring this space is the space from where you go into the aperture and then from the location of the end of the nozzle. I think the district court reads too much into that language. The nozzle... I guess your argument is we should be thinking of only the most distal plane of that aperture as being the focal point of doing this measurement in this plane. Is that your point? Yes, the point to the context of the specification makes it clear that that distal end is what's called the exit orifice. The mixing of the air and the liquid under the context of the specification occurs in the cavity portion, not the aperture. In fact, this section in column 10 that describes the ductor configuration does not use the term aperture with respect to that part of the description. Mixing takes place in 116. Exactly. And that's defined as an aperture. No, 116 is defined as a cavity. It's defined also as an aperture, isn't it? I don't believe so. It's defined as a cavity. It is sometimes defined as a chamber in line 40 there in column 10, but it is not defined as an aperture. Exit orifice 119 technically is not defined as an aperture either. It's an orifice, and that distinction is to show that it is a two-dimensional... The claim uses a broader term, aperture. That is correct. But the detailed description defines that as an exit orifice. The parties agree that the exit orifice is basically the reference to the recited aperture in the claim. And this is very common in patents. The detailed description provides a detailed description of one embodiment. And then the claims recite language to broaden that description so that it can cover more than one embodiment. The detailed description in column 10 talks about one embodiment of an inductor, and the exit orifice in that is the end of that cavity. It's the end of that chamber. Again, from the context here, we see that the mixing of the liquid and the air occur in the cavity. And that mixture is then what exits the exit orifice. And from the picture, it's clear that a lot of mixing happens in that yellow-shaded area. The air and the liquid, that's essentially where the air and the liquid meet in that yellow-shaded area. So that can't be the aperture. That's got to be the cavity. That's the only place where the cavity is? That little yellow piece? No. The cavity, again, from the context of the specification, it's defined by those three openings. The nozzle. There's other space in there, is my understanding. There is other space in there, yes. There's other space where the air comes in. There's other space, specifically in Figure 9, under the nozzle. There's a space where the liquid is drawn into the cavity. But then that mixing happens in what defendants and the court have called the aperture. And that is a mistake. You have used almost your entire time. I have. Do you want to save the remainder? I will save what I can for rebuttal. Thank you. Thank you, Your Honor. Your Honors, may it please the Court. My name is Elliot Hales. I represent the Puget-Napolese in this case. In our view, this appeal, similar to my friend in argument, we think is pretty simple. The two most important issues here are whether the court construed the spacing limitation correctly and applied it correctly in issuing summary judgment, and whether it correctly construed the anchoring limitations and correctly applied those in summary judgment. Each one of those independently supports the summary judgment in full, right? That's right, Judge Tronto. As for the other two. The duty cycle does not bear on Claim 14. That's right. And the term droplets well construed is not case dispositive here. And then the appellant raised the fourth claim construction argument, right? For the droplets terms? Yes. That's right. And we don't need to address that. That's right. If either the spacing limitation or anchoring limitations was correctly construed and correctly applied in summary judgment, then those would both be sufficient to dispose of this appeal and need not be reached in any disposition of this appeal. Returning to the spacing limitation, the salient issue discussed by my friend in argument here is whether an aperture is correctly considered to have three dimensions. We don't think that there is any dispute on this issue, either in argument today or in the record. The reason for this is that the entire point of construing this term was because the parties had differing views of the point in this aperture at which a party should measure to determine if the aperture is appropriately spaced away from the nozzle. Namely, appellees viewed you should measure to the front side of this aperture and appellants believed you should measure to the back side of the aperture from the nozzle. Because those two measures would yield different distances that needed to be construed so the jury wasn't determining the scope of claim language and so it was construed. The very nature of the dispute reveals that apertures were conceived by the parties to have three dimensions. If the front and back of a two-dimensional plane are in the same place, they would have yielded the same measure and there was no reason to construe this term. Why is that so? His argument is that focusing on the yellow piece, 119, as an independent structure is wrong. That basically 119 is simply a part of this chamber, 116, and that it's a unitary structure and that the aperture can therefore refer, aperture 119 can just as well refer to the exit side of the structure as opposed to the entry side. We think there are several problems. Because they're one and the same if it's two-dimensional. Sure, we think there are several problems with that argument. The first is 116, the lead line leads to the chamber itself. The lead line for 119, the exit orifice, leads to the horizontal tunnel that leads away from chamber 116. Because they are individually demarcated, individually named, we think there are separate structures. Are they indeed individually marked? Part of their argument is that you've created something in the drawing. Just to be clear, when you say the 119 squiggly line leads into the inside of that yellow chamber, how in the world would I see that? You blew it up, and then you blew it up some more, and then you blew it up some more, and it appears that there's a little bit of ink that moves across that left face. But that's not apparent from looking at the patent without a microscope or a magnifying glass. We just zoomed in using the ordinary PDF tools available to any person of skill in the art interested in where the lead line terminates. Right, but maybe that's an artifact of the printing. Let's assume that for the sake of this argument. Let's return then to the issue, is an aperture correctly understood in the art to be three-dimensional? The evidence in the record is conclusive on this point. First, as the Court has observed, the term aperture is repeatedly used in this patent and almost uniformly used to describe elements having three dimensions. This is evidenced by element 25B, which is described as an aperture in a grommet, allowing the electrical cables to enter the device. When a pellance expert was presented with element 25B and the corresponding specification disclosures— Which is where? That is in column 2 on appendix page 43. 42? Let me get the precise— You said column 2? You said it was element what, 25? 25B. You said? 25B as in boy. B as in boy, and where is it? I see, line 43, column 2. No. No, column 5, I'm sorry. That's right, column 5, line 43. It's named as aperture 25B. If the Court goes and looks at figure 2, element 25B is shown there. That element is clearly a three-dimensional tunnel running through that grommet piece. And when this was shown to a pellance expert in the course of his deposition, he agreed that the patentee here has described this aperture and that this aperture is shown as having three dimensions, and he agrees that this aperture, according to the patentee, is intended to have three dimensions and is depicted as such. So the idea that an aperture has three dimensions is accepted, and it's accepted as specific to the intrinsic record here in this patent specification. That testimony is found in the mix. Right, but when you do the measurement and interpret where you're measuring to from your expert, you end up with a distance lesser than the patent wanted to have. That's right. Right, meaning that you're less efficient than the deductor is less efficient than the patentee wanted to have. You have to have some room when the air comes out of the nozzle under pressure, and then the Venturi effect sucks the, whatever it is, aroma stuff out of the canister and then mixes it up. There has to be enough room to mix it up in effectively to get it out. That's the reason for having the distance, because if the nozzle was flat up against the aperture, right? Right. It wouldn't work. Right, there'd be no negative pressure. You know, it would just also, it would just bounce, and you wouldn't have effective mixing. Right. So under your interpretation of the claim and your measurements, the deductor is much less efficient. It doesn't have enough space to work. It's against the patent. The patent requires a space of X, distance between the nozzle and the exit, in order to have effective eduction, right? I think your question assumes that the range here, the 1 to 10 effective diameters of the nozzle, has claimed the only effective ranges here. The fact that we have a functioning deductor shows that the claim— Well, we went to all the trouble to say, you know, the distance between the nozzle and the exit is very, very important, the way these things work, and it wants to be a distance of between X and Y. Right. Meaning he needs at least X to Y. To make it work, it's got to be at least a lower number to the larger number, right? I don't think the argument is in order to work it has to be 1 to 10, but rather my invention claims the range of 1 to 10, right? There may well be functioning deductors that operate outside of the range of 1 effective diameter away and 10 effective diameters away, but that's not their invention, or at least it's not within the scope of their claim. The other point would be this argument wasn't made below it. Right, right. That's correct. And it's inconsistent with arguments made elsewhere. We've seen argument in the briefing at page 6. There can be no gap between the nozzle and the aperture for the product to function, but then we see at appendix sites 384, 417, and 1138. Assume for purposes of argument that I agree with you that the district court did not commit error in determining that the exit orifice is a three-dimensional structure, so we have measurement. And assume for purposes of argument that I agree that the district court picked the entry place into the exit orifice as being the demarcation point for the measurement. I don't understand what happened in terms of the infringement analysis under that claim construction. Your expert made measurements, and he measured the mouth of the nozzle, came up with a number, measured the distance, came up with a number that shows less than to be within the range of the claim. I don't understand the evidence that was put in by your adversary. Well, to that point, there was no evidence put in by my adversary in our view. Now, this cutoff device, that was put in evidence. Wasn't that in his – it's all done on paper. There was no trial on infringement, right? There are five pages, or rather five places in the record that my friend in argument points to as sufficient proof for a reasonable jury to rely on in finding infringement. The first two are the statements in the infringement contention saying the aperture is 46 effective diameters. Well, his expert's saying measurements don't count, and I don't have to look at it. You can just look at it, and you can tell it. I'm going to exclude all that. Right. What I'm really looking at are his cutouts. Okay. And trying to understand whether there was a triable issue of fact. He put that information in front of the judge, and he said, here's my nozzle. I think in the drawings, he pointed to the nozzle. What I couldn't find was where in that array of information and the pictures, I couldn't find out where the exit orifice was. Right. That image is found at Appendix Page 5. That's found in the court's motion for summary judgment disposition. The specific image I think you're talking about is where – You've got the page of that. Just a second. Appendix Page 5. Page 5? Appendix Page 5, yes. Okay, thank you. This is the court's summary judgment disposition of the case, and it has excerpted one of the pages to which the appellant points as sufficient proof of its infringement. The problem with this image is that there is no accompanying testimony that I used this ruler to measure the nozzle, the nozzle being this diameter. Where is the alleged aperture? That's a good question. If you see the image below, you see that purple kind of archway? We don't have colors. I'm sorry. I don't know what purple is. Do you see the component that exists in the image below that kind of descends from above and has an archway at the bottom of it? That is alleged to be the aperture top and to kind of define the top of this aperture that exists. Is the aperture the arch? It is the arch. Summary picture 21. Yes, there are two images on Page 5, Appendix Page 5. There are two images on Page 5. You have a color version. I copied it out from the Internet, from the record, so I don't see any purple. On Appendix Page 5? Yes, on Appendix Page 5 you're looking at which one of the two pictures, the top or the bottom? My apologies. I get color confused sometimes. This component which descends from the top of the image on Page 5 and has an archway at the bottom of it? Page 5 has two pictures on it. Which picture are we talking about? The lower image. Yeah, that's what I was asking. Okay, we're at the lower one. And here he shows where he thinks the nozzle is. And then he's got the aperture space and something called the aperture side and something called the separator or separating chamber. Okay, I know that. All these labels are blurry. I can't read them. Yeah, I have no ability to read the labels. And we have the same issue in calling this sufficient proof for a reasonable jury. I can read on what is in the record in this case. It's got what was printed in the brief and what's printed in this thing you can't look at. If you go to look at the briefs that were filed online, that's where the color shows up. Okay. Well, at any resource in which we look at. And so I see a nozzle and I see an alleged aperture space, right? And I see he's got a measuring device that I use at home, my ruler. And was there any argument based on producing a number because the patent is calling about specific numerical distances that need to be met? The short answer is no. Their expert has never used this image or this ruler or this device so far as we can tell anywhere in the record to have performed an infringement analysis. Rather, this was accompanying the infringement contentions. And so far as we understand, those were submitted and conducted by the attorneys themselves. So as for whether this constitutes evidence of infringement, we think the answer is no. Well, it's taken by the court and put into the court's opinion. So the court didn't say it's not evidence. The court didn't say it's not evidence, but it said it's not sufficient evidence for a reasonable jury to find infringement. Well, that's what I'm trying to get at, sir. I simply don't know when the other side ever made any measurements. I guess you say they didn't. There is no testimony that any person has ever performed a measurement on appellant's side of the nozzle diameter or the distance from the nozzle to where the aperture structure should be. The expert has not testified. Well, I suppose your argument would be at the very least in order to get this case to the jury. Once they put the ruler up against the distance between the nozzle and the so-called aperture space, there would have to be a number associated with the aperture space. Somebody would need to be able to testify to the jury. What I'm just saying, at the least you'd need to find that in the record. Right. We've had no opportunity to plumb the merits of the methodology performed or who performed it, how they performed it, whether this is reliable evidence that a jury can say this expert has provided sufficient rule. Where do you think the aperture is in your device? So, the infringement contention will represent to you what the appellants have said. No, I want to know what you think where the aperture is. There has to be an exit orifice somewhere, right? To the extent an aperture exists, it's the area inside the arcuate flange that exists beneath the arch in between the sidewalls and above the base. This happens to sit above the siphon tube, which is hard to see, but which extends… The exit orifice was behind the nozzle? No, the aperture would lie in line with the jet of air that exits the nozzle. But there was a lot of talk about who was it that brought up this notion of the exit orifice being behind the nozzle. That was appellants. I read something where they say, no, no, no, that wasn't us, that was you. And then I read what it was, and it was you. The argument is, and I'm out of my time, but I'd like to answer your question. The argument was that the three structures we talked about, the top, the sides, and the bottom, the bottom does extend behind the nozzle. The sides to some eyes could extend behind the nozzle, but the aperture top, which would define the top of the aperture… What is the bottom? The bottom of what? The bottom of the chamber extends back behind the tip of the nozzle. Is that 116? So this is a product, not a patent figure, but the base of our product, of that adduction chamber, the alleged adduction chamber, does extend back to and behind the tip of the nozzle. Well, all that compressed air in your device that is enjoying mixture adduction with the fluid that's coming up out of the reservoir, it goes out to go into the air somewhere. Correct. And where is the exit in the drawings of the dissected machine? Where does the air come out? Do the photos on A4 show it? Yes. If you look at appendix page 4, the upper archway would descend… Are we talking about the picture on the bottom or the picture on the top of page 4? My explanation would apply to both pictures. Pardon me? Well, in the bottom image on appendix page 4… Bottom on page 4. Okay, fine. You can see the removed component that has that archway at its bottom. That would be inserted into this circular space such that the archway arms point down. I've got the version where I can read it. So the exit is at the, not the separator wall, the aperture side. Where is it? Is the exit 12, 16, 22, or which number? The numbers aren't as clear in my image. I can only describe it with reference to the structure. I don't think you would know that. I don't know the numbers. Well, I'll tell you. The number that's on the top at nozzle is 12. Okay. The number that's below that aperture side is 16. Okay. The one slightly to the left of that is 22 separator wall. Right. Over on the left, 20 is separator or separating chamber. And the one on top is 42 reservoir tube. Right. The answer to your question then is the air proceeds from the nozzle over the siphon tube, and the siphon tube is where the aperture would be located, according to the infringement allegations. And then it proceeds left in these images. There isn't a siphon tube mentioned here. It would be reservoir tube. Which? Reservoir tube. I think it's number 12 or 42. Okay, reservoir tube. In the lower image, there's a reservoir tube, according to my image. So that's the exit. No, the exit would be to the left of that reservoir tube, and then it would enter the separation space to the left of the reservoir tube. There's a little blank space there in the picture. Is that the hole? Which hole? Well, where the stuff is coming out of the mixing chamber and going towards being able to be spread out in the air. Right, that hole or aperture exists only when you insert the component in the lower image to the left, which defines the alleged aperture of the accused product. Okay. Because, in our view, the court appropriately construed the anchoring and spacing terms and applied them faithfully, we ask that the court affirm the court's judgments. Thank you. Thank you. If I may, I'd like to start with one idea about the aperture. An aperture can be a three-dimensional opening, but it can also be a two-dimensional opening. That's the whole point to using the term aperture in the claim, is that it can cover more than one thing. The exit orifice, under the context of the claim, is a two-dimensional opening at the end of the cavity where the mixing occurs. I'd like to look at appendix pages four and five for a minute if I could as well. This is a picture of the accused device. The labels are very blurry. I can't make heads or tails out of those. The labels are blurry, and I apologize for that. You can see there's kind of an opening that has a little bit of a U shape. It's like a floor with two walls. Which photograph are we looking at? I'm looking at the bottom photograph, although the top one also shows. On appendix page five. I'm sorry? On appendix page five. Oh, I'm sorry, appendix page four. Four, thank you. I'm sorry. On the bottom. On the bottom. Yes. This shows the cavity has a floor and two sides in that bottom picture. Where's the cavity? The cavity is right in front of the nozzle. You pointed out nozzle number, label number 12. Yeah, but the cavity is not defined. The cavity is not identified here, although you can see that there are sides next to the nozzle and a floor, and then the aperture top fits over. Well, it's also part of a greater open chamber. Yes, it's a smaller. It's like a bowl, a bowl. Exactly. So you're going to say there's a chamber inside the chamber? Well, the bigger chamber is what we call the separator, the separation chamber. The other chamber is what we call the cavity right in front of the nozzle, and that cavity has an exit orifice that's very similar to the one in the patent. It is not right up next to the nozzle. When that aperture top essentially forms the roof of that cavity. Are we talking about the archway? Yes, the archway. Okay. The archway. I mean, right now on the bottom photo of A4, we don't actually see the aperture when it's fully assembled and put together. And that's kind of the bottom of page 5. That's why you have to kind of look at both of these together. Is the bottom of page 5 showing me the aperture right now? Well, the bottom of page 5 is cut away to show the… Right, right. But, sir, for me, what your problem is, this discussion we're having right now is not in the record. This explanation about what all these things mean, I didn't see that anywhere written down on a piece of paper that the judge could understand. Okay. The judge put these in here and had other pictures. These pictures were supplied by you for your client to show why under the district court's claim construction there was infringement. Right. Right. And so you're now saying which is what, where the air goes, where the chamber is, and all that. And then you've got a yardstick, supposedly, that's going to show the measurement. But I don't see any explanation of any of this. The explanation is on appendix page 152, on appendix page 158. I would say there's a… Would that just go to 152? Yes. And I'm sorry, if I may, I'd almost rather jump to page 1181 for the reason that my friend said that ESIP's expert never looked at this picture and never made a calculation with respect to the adductor configuration. And on page 1181 and 1182, more specifically in paragraphs 63 and 64 there, our expert does describe the adductor configuration and how a measurement is taken. It can be, as he says, a simple inspection of the actual device. And that's what these pictures show. I'm sorry? Where does he say that? What line? Paragraph 63 or 64. Paragraph, I think that's in 63. No, it's basically 64 and 65, or 64 you're relying on. There's no measurement there. The measurement is on appendix page 152, where we say that the measurement is 4 to 6 nozzle diameters. The expert looks at this picture. He notes it in, I think it's paragraph 64 there, and says that the distance between the nozzle and the aperture is indeed within the claimed range. Without explanation. The explanation is accompanying with the picture, that you can look at the adductor configuration and determine the distance. This is a common idea of a perfect example in everyday life is a traffic situation. People talk about how the distance between cars using car lengths. The car length doesn't have to be exactly known, but you can tell how far away from another car a car is and show it by car lengths. There are many court cases that talk about that distance being established in car lengths. That's what the inventor did here. This distance is established in minimum effective diameters. Aren't we talking about something on the level of microns? No. With respect to the minimum effective diameter, defendants measured it and ESIP does not dispute that it's 500 microns, which is half a millimeter. When you talk about car lengths as an analogy, to do a visual inspection of something, that feels a little different than when we get to the order of half a millimeter. I have no confidence just from looking at something, whether something is 500 microns in length. The ruler here is actually showing centimeters divided into millimeters. That ruler is there to provide scale. What you can see is that half a millimeter is observable by the naked eye. The distance from the nozzle to the exit orifice is, if you want to convert it to millimeters, it's 2-3 millimeters, which is again observable with the naked eye. That's a centimeter ruler, not a standard inch ruler? It's an inch ruler, but it's got inches on the other side. It's a ruler where inches are on one edge and centimeters are on the other edge. This happens to show the centimeter edge. You know that because it's divided into tenths. An inch ruler is divided into sixteenths, not tenths. This shows centimeters on this side, and the hash marks show millimeters. I'm sorry. I apologize. No, you were answering questions, but I think it is time to bring this to an end. Thank you, Your Honor. I appreciate it. And thanks to both counsel. Case is submitted.